**EAST/WEST VENTURE and Philip Birnbaum & Associates, P.C., Plaintiffs,**

v.

**WURMFELD ASSOCIATES, P.C., Defendant.**

**No. 88 Civ. 7459 (RPP).**

United States District Court, S.D. New York.

Oct. 11, 1989.

Mark Jon Sugarman, Robinson, Silverman, Pearce, Aronsohn & Berman, New York City, for plaintiff East/West Venture.

LePatner, Gainen & Block, New York City, for plaintiff Philip Birnbaum & Associates, P.C.

Gerald M. Levine, Gallet Dreyer & Berkey, New York City, for Wurmfeld Associates, P.C.

### OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

Defendant Wurmfeld Associates, P.C. (Wurmfeld), an architectural firm, moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the complaint in this action for declaratory relief. Defendant contends the complaint fails to state a proper claim and to set forth an actual controversy.

Wurmfeld was the creator of eight sets of architectural plans (the Wurmfeld Plans) which were prepared for the development of a real estate parcel located in Fort Lee, New Jersey (the Property). The Wurmfeld Plans were registered with the Copyright Office on May 24, 1988.

Plaintiff East/West Venture (East/West) is the present owner of the Property, which it purchased from Massa Palisade Develop-

ment Corporation (Massa). In connection with the purchase Massa assigned to East/West the right to use the Wurmfeld Plans. Wurmfeld maintains this assignment is invalid because Massa had terminated Wurmfeld as architect for the development of the Property prior to the sale and the assignment to East/West, and because Wurmfeld did not subsequently grant Massa a right to assign the plans.

After purchasing the Property, East/West retained Philip Birnbaum & Associates P.C. (Birnbaum) as architects and, in June 1988, filed a set of architectural plans bearing Birnbaum's name with the Fort Lee Board of Adjustment in connection with an application for site plan approval (Birnbaum Plans). Thereafter, Wurmfeld commenced a lawsuit claiming the Birnbaum Plans infringed on its copyrighted materials. In September 1988, East/West withdrew its application for site plan approval because the Fort Lee Planning Board had enacted a Master Plan recommending a rezoning of the subject area. East/West then commenced an action in the courts of New Jersey contesting the validity of the Planning Board's action. Upon receiving notice of East/West's withdrawal of the Birnbaum Plans, Wurmfeld voluntarily dismissed its lawsuit.

East/West commenced this action for declaratory relief in late 1988. The complaint seeks declaratory judgments on four claims: (1) defendant has forfeited its protection under the Copyright Act; (2) plaintiffs have not infringed upon defendant's interests under the Copyright Act; (3) plaintiffs have not infringed upon defendant's interests under Section 43(a) of the Lanham Act; (4) plaintiffs were and are entitled to use the Wurmfeld Plans for the proposed construction project pursuant to the Massa Agreement.

■ The Court dismisses the first count of the complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a cause of action upon which relief can be granted. Plaintiffs allege that defendant forfeited its copyright protection because, first, "none of the Wurmfeld Plans bore any copyright notice or designation prior to their publication" and, second,

"Wurmfeld failed to properly register the Wurmfeld Plans or any of them with the United States Copyright Office until after they were published." Complaint ¶¶ 24, 25. These allegations fail to state a cause of action because a copyright inherently attached to the Wurmfeld Plans and the Wurmfeld Plans were not "published."

"Copyright in a work created on or after January 1, 1978 subsists from its creation...." 17 U.S.C. § 302(a). Although a notice of copyright becomes necessary when a protected work is "published," 17 U.S.C. § 401(a), the filing of the Wurmfeld Plans with the Fort Lee Board is insufficient to constitute a publication under 17 U.S.C. § 101. *See WPOW, Inc. v. MRLJ Enterprises,* 584 F.Supp. 132 (D.D.C.1984) (filing of engineering report with FCC which subjected report to public inspection did not constitute publication under Copyright Act); 1 *Nimmer on Copyright* § 410 (filing of architectural plans with local authorities after January 1, 1978 "clearly does not constitute an act of publication"). Accordingly, the Court dismisses the first claim because the complaint alleges no grounds for a declaration that defendant's copyright interests had been forfeited.

■ Wurmfeld moves to dismiss the second and third claims for declaratory relief, arguing that the plaintiffs are seeking to settle disputes that are either past or have not matured, and that in copyright infringement disputes there must be "current infringement activity."

Plaintiffs respond that there is an actual controversy, i.e., whether the Birnbaum Plans infringe on the Wurmfeld Plans. Plaintiffs argue that they will be injured if this controversy is not settled because of the time which will elapse while future litigation of this issue ensues, resulting in consequent delays in the start of construction and increased financing costs.

The Birnbaum Plans for which plaintiffs seek an adjudication now exist. They were filed with the Fort Lee Board of Adjustment. Furthermore, Wurmfeld has not dropped its position that the Birnbaum Plans unlawfully infringe upon its copyrighted plans. Accordingly, there is a controversy of copyright between the parties

based on actual documents. Defendant, however, argues "actual," under the Federal Declaratory Judgment Act,[1] means there exists a real prospect of use of the infringing material. The Court can find no support for this proposition of law.

To determine the justiciability of this controversy, the Court need not participate in abstract debates over what constitutes an advisory opinion. The Court must examine only whether the allegations in the complaint are sufficient for the Court to assert jurisdiction under the express statutory authorization provided by Congress. Thus the Court must first establish what Congress meant by "cases of actual controversy" as a threshold for the issuance of declaratory judgements.

■ In the seminal case explaining the Declaratory Judgment Act, Chief Justice Hughes stated:

[I]ts [the Act's] limitation to 'cases of actual controversy,' manifestly has regard to the constitutional provision and is operative only in respect to controversies which are such in the constitutional sense. The word 'actual' is one of emphasis rather than of definition. Thus the operation of the Declaratory Judgment Act is procedural only ... [i]n providing remedies and defining procedure in relation to cases and controversies in the constitutional sense....

*Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 239–40, 57 S.Ct. 461, 463, 81 L.Ed. 617 (1937). Accordingly, the Declaratory Judgment Act does not impose a higher threshold for justiciability than the basic Article III requirement that federal courts shall only decide cases or controversies.

■ To determine whether a case or controversy exists, the Court must examine the allegations in light of the applicable law. Indeed, this is what the Second Circuit did in the case principally relied upon by defendant, *Wembley, Inc. v. Superba Cravats, Inc.*, 315 F.2d 87, 90 (2d Cir.1963). In *Wembley* the court determined that justiciability under the Declaratory Judgment Act depended upon whether plaintiff " 'is about to infringe or take some action which is prejudicial to the interests' " of the defendant. *Id.* (quoting Borchard, Declaratory Judgments, at 807). As Judge Medina did in *Wembley*, the Court first defines the "interests" of defendant under the relevant statutes. Then the Court assesses whether plaintiffs are "about to infringe or take some action which is prejudicial to" these interests. The court in *Wembley* looked to the current patent law to determine the scope of the defendant's interest. Here, the Court must examine the Copyright Act (claim (2)) and Section 43(a) of the Lanham Act (claim (3)).

■ Congress intended the Copyright Act of 1976 to protect architects from the unauthorized "copying" of their plans.[2] 17 U.S.C. §§ 101, 102(a)(5). Copied architectural plans do not even have to be filed with a local administrative board for interests under the Act to be implicated. The mere fact that the Birnbaum Plans have been drawn by Birnbaum, approved by East/West and that Wurmfeld has claimed they are infringing, and still believes them to be infringing, entitles plaintiffs to a declaratory judgment from the Court on this the second claim. *See also Aetna Life*, 300 U.S. at 242, 57 S.Ct. at 464 ("The dispute is definite and concrete, not hypothetical and abstract. Prior to this suit the parties had taken adverse positions with respect to their existing obligations.")

The third claim, under Section 43(a) of the Lanham Act, also presents an actual

---

1. 28 U.S.C. § 2201 provides in relevant part: In a case of actual controversy within its jurisdiction, ... any court of the United States, upon filing of appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

2. It is beyond the scope of the Copyright Act, however, to prevent the use of another architect's plans. *Demetriades v. Kaufmann*, 680 F.Supp. 658, 664 (S.D.N.Y.1988) (relying on *Baker v. Selden*, 101 U.S. (11 Otto) 99, 25 L.Ed. 841 (1879)). Usage of ideas is the province of patent law. *Id.* at 662–64 (citing 35 U.S.C. § 102).

controversy. Section 43(a) protects architects from false designation of their work. *Demetriades v. Kaufmann*, 698 F.Supp. 521 (S.D.N.Y.1988). "Even one false designation of authorship can be enough to create confusion, so long as that designation is accessible to the public." *Joseph J. Legat Architects v. United States*, 625 F.Supp. 293, 300 (N.D.Ill.1985). In *Legat Architects*, a single filing of a plan with a government agency was sufficient to implicate an architect's interests under Section 43(a).

Plaintiffs have already filed with the local board a copy of the Birnbaum Plans, which defendant has alleged utilize aspects of the Wurmfeld Plans. Moreover, plaintiffs plan to file amended plans upon resolution of the zoning litigation. Accordingly, the complaint alleges acts which have infringed and are "about to infringe" upon defendant's interests under Section 43(a) and thus the third claim in the complaint presents the Court with "a case of actual controversy."

The motion to dismiss the fourth count is also denied. The fourth count alleges that Wurmfeld's rights under the contract have been assigned to East/West. The controversy over the status of defendant's rights in the Wurmfeld Plans is sufficiently ripe for a declaratory judgment adjudication and additional fact-finding is necessary to determine the validity of plaintiff's allegations that a valid assignment of those rights occurred.

Although the Court has jurisdiction under the Declaratory Judgment Act to render judgment on claims two through four, the Court concludes that it could address these matters most efficiently by placing them on the suspense calendar until new plans are on file with the Fort Lee Board of Adjustment.

■ Plaintiffs' affidavits state that the copying of certain basic design features by Birnbaum has been dictated by (i) the configuration of the Property, (ii) a massive pre-existing but unused garage structure on the Property which must be incorporat-

ed into the overall development plan for the Property for development to be economically feasible, and (iii) zoning restraints required or usually required by the Fort Lee Board of Adjustment. Plaintiffs assert that the basic development scheme and basic design features of the controversial Birnbaum Plans must be and will be utilized. A determination of copyright infringement under such circumstances raises an interesting issue. If a property is of such a unique nature that its plans relating to development scheme and basic design features must be substantially identical, has the first architect to design plans a right to prevent the use of plans incorporating such scheme and features? The Court concludes that to demonstrate infringement something unique in the plans not demanded by the uniqueness of the site must be copied.[3]

The Court will have to evaluate the unique, not-demanded-by-the-site features in their juxtaposition to the non-unique or demanded-by-the-site features to determine if infringement has occurred. Given the present status of no plans filed, the Court desires to avoid having to revisit the delicate issue of infringement time and time again as further changes are made to accommodate New Jersey authorities or changes in the owner's plans.

Accordingly, although the Court finds that an actual controversy exists and denies that defendant's motion to dismiss counts two through four, it also determines that this matter should be placed on the suspense calendar with leave to either party to request its restoration to the active calendar at such time as there are actual plans on file with the Fort Lee Board of Adjustment.

The Court grants the motion to dismiss the first count and denies the motion to dismiss counts two through four.

SO ORDERED.

---

**3.** Of course, if the Wurmfeld Plans' adaptations to the site's requirements are original and prod- ucts of Wurmfeld's creativity then they may be copyrightable under the statute.