INTERNATIONAL MEDICAL PROS-
THETICS RESEARCH ASSOCIATES,
INC., d/b/a IMPRA, Inc., Appellant,

v.

GORE ENTERPRISE HOLDINGS, INC.,
and W.L. Gore and Associates,
Inc., Appellees.

Appeal No. 85–2744.

United States Court of Appeals,
Federal Circuit.

April 1, 1986.

Gerald D.W. North, McCabe, Polese & Pietzsch, P.A., Phoenix, Ariz. argued, for appellant. With him on the brief, were James F. Polese, McCabe, Polese & Pietzsch, P.A., Phoenix, Ariz., Dale M. Heist, Woodcock, Washburn, Kurtz, Mackiewicz & Norris, Philadelphia, Pa., and Thomas S. Howard, Chicago, Ill.

David H. Pfeffer, Morgan, Finnegan, Pine, Foley & Lee, New York City, argued, for appellee. With him on the brief, were Arnold I. Rady, Janet Dore and Bartholomew Verderame, Morgan, Finnegan, Pine, Foley & Lee, New York City, and John S. Campbell, W.L. Gore & Associates, Inc., Newark, Del.

Before MARKEY, Chief Judge, NIES and NEWMAN, Circuit Judges.

MARKEY, Chief Judge.

International Medical Prosthetics Research Associates, Inc. (IMPRA) appeals from a judgment of the United States District Court for the District of Arizona dismissing IMPRA's complaint as not within its subject matter jurisdiction. The judgment was entered in response to a motion filed under Rule 12(b) by Gore Enterprise Holdings, Inc. and W.L. Gore Associates, Inc. (Gore), challenging IMPRA's complaint for declaratory judgment of invalidity of Gore-owned Patent No. 3,953,566 ('566 patent) for failure of IMPRA to establish existence of an actual controversy. We vacate and remand.

## Background

■ This appeal represents one of many sideline skirmishes between the parties to an eleven-year corporate confrontation over the use of a process for producing porous articles of polytetrafluoroethylene (PTFE) and the marketing of products produced of PTFE.[1] In April 1984, Gore sued IMPRA for infringement of Gore's U.S. Patent No. 4,187,390 ('390 patent) directed to a product formed of PTFE.

In February 1985, IMPRA filed a complaint seeking a declaratory judgment that Gore's '566 patent was invalid. The '566 patent is directed to a process for producing PTFE. In March 1985, the court consolidated the two actions. Between April 1984 and September 1985, the parties' pretrial activities produced 782 entries in the trial court's docket.

Asserting that it has not charged IMPRA with infringement of its '566 patent, Gore moved under Rule 12(b) for dismissal of IMPRA's declaratory judgment complaint, asserting *inter alia* the absence of an actual controversy and thus a lack of subject matter jurisdiction.[2] The district court granted the motion and IMPRA appealed.

## Issue

Whether the district court erred in granting the motion for dismissal.

---

1. The subject matter was involved in *W.L. Gore Associates, Inc. v. Garlock,* 721 F.2d 1540, 220 USPQ 303 (Fed.Cir.1983), *cert. denied,* — U.S. —, 105 S.Ct. 172, 83 L.Ed.2d 107 (1984).

2. The parties argue before us Gore's venue, service, and indispensability assertions. The district court based its judgment on lack of subject matter jurisdiction. Because the district court did not rule on Gore's asserted alternative bases for dismissal of the complaint, we cannot and will not engage in the fact-finding necessary to rule on them. Affirmance on an alternative ground is appropriate only when such affirmance does not depend on fact-finding.

## (1) *The Case*

The present appeal presents a scenario that, it can be fervently hoped, will occur less frequently in future. Though the district court entered no findings or conclusions on a large number of allegations and assertions, the parties have elected to burden this court with arguments thereon, in a false and improper expectation that we will find the facts necessary to support their respective positions. Each charges the other with impropriety respecting the record and the appendices.

The case is unusual on its facts. The district court had cited to and apparently relied on *Jervis B. Webb Co. v. Southern Systems, Inc.*, 742 F.2d 1388, 222 USPQ 943 (Fed.Cir.1984). Like the more "normal" case, *Jervis B. Webb Co.* involved one action, a patentee's suit for infringement of only six claims, and the defendant's counterclaim for a declaration that all twelve claims of the patent were invalid. In the present case two patents, the '390 patent claiming a product and the '566 patent claiming a process for making the product, issued as a result of a single patent application. The patentee, Gore, sued IMPRA on the former but not on the latter, and IMPRA says it seeks to settle the entire controversy by obtaining a declaration that the '566 patent is invalid, fearing a Pyrric victory if it wins the suit on the '390 patent but must then face a lawsuit on the '566 patent.[3]

## (2) *The Grant of the Motion*

On July 8, 1985, in granting Gore's motion to dismiss, the district court said:

Well, I'm going to grant the motion to dismiss on the basis of lack of subject matter jurisdiction. I think the other bases are good, really, in proper [sic] service, venue, indispensable party, but those can really be cured by the the [sic] counterclaim, but the basis is the lack of subject matter jurisdiction.

On July 9, 1985, following a hearing on a different motion in the consolidated case, counsel engaged in this colloquy with the court about the July 8 dismissal:

Mr. North: [IMPRA's counsel] So the holding was that we didn't allege that we made an infringing product, and my argument to you was that all we were required to do was say we made a product that is accused. And you interpreted the Webb case to mean we must actually say we're infringing?

The Court: Yes. That's my interpretation.

Mr. North: Well, Your Honor—we must admit that we're infringing in order to seek declaratory relief under [the] patent laws?

The Court: That's my understanding of it.

Mr. Pfeffer: [Gore's counsel] Well, Your Honor, I understand it there was a particular requirement of the claim, and their assertions keep on being that they're not following that particular requirement of ten percent per second. That's their position.

Mr. North: That's correct.

Mr. Pfeffer [erroneously designated as Mr. North in the hearing transcript]: And according to the Webb case if somebody takes a position that they're not following a material portion of a claim then they're not entitled to declaratory judgment.

The Court: That's the way I ruled.[4]

The judgment granting the motion merely says, as is appropriate in a judgment, "that plaintiff take nothing and the action is dismissed." The district court entered no findings or conclusions and filed no memorandum or opinion. We have before us, therefore, as the sole basis for the

---

**3.** Whether Gore's failure to include the '566 patent in its suit on the '390 patent creates a collateral estoppel precluding a later suit on the former is a question that was not argued and must doubtless await the event.

**4.** The "Webb case" referred to in the colloquy is *Jervis B. Webb Co., supra.*

judgment, the statements of the district court quoted above.[5]

### (3) Admission of Infringement

■ There is, of course, no "rule" that parties seeking a declaratory judgment of patent invalidity must show an actual controversy by admitting "infringement." Such an admission can have legal consequences beyond those that might result from an admission that one is making a product or practicing a process that is *accused* or that *might* at trial be found an infringement. Declaratory judgment plaintiffs who have been accused of infringement or threatened with suit are at full liberty to deny infringement and often do. They are at liberty, also, to admit infringement while asserting that the patent is invalid and that no liability for the infringement can therefore exist. Indeed, when the latter is the truth, admission of infringement is to be encouraged as a means of limiting the issues to be tried. Thus, whether *infringement* is admitted is not alone determinative. It is difficult to conceive of a justiciable controversy when *neither* party says there is any possibility of infringement, yet no court has held that a declaratory judgment plaintiff must always *admit* infringement.

■ What counts is whether an actual controversy exists. The long established rule is that a party seeking a declaration of patent invalidity must, on the "totality of the circumstances," establish that the statutory requirement of 28 U.S.C. § 2201 (that an "actual controversy" exists between the involved parties) is satisfied at the time the complaint is filed. *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 272, 61 S.Ct. 510, 511–12, 85 L.Ed. 826 (1941); *C.R. Bard, Inc. v. Schwartz*, 716 F.2d 874, 880, 219 USPQ 197, 203 (Fed.Cir. 1983).

In *Jervis B. Webb Co.*, nothing of record indicated the presence of a justiciable controversy. There had been a trial and the evidence was that the patentee had done nothing to indicate any intent to sue on the non-asserted claims, there was no product accused as infringing those claims, and the declaratory plaintiff had testified without contradiction at the trial on the asserted claims that it had never employed a critical element of the non-asserted claims. This court said that the statutory requirement is satisfied when "a defendant's conduct has created on the part of the declaratory plaintiff a reasonable apprehension that it will face an infringement suit if it commences or continues the activity in question," and when the plaintiff has "actually produced the accused device" or has "prepared to produce such a device". *Jervis B. Webb Co.*, 742 F.2d at 1398–99, 222 USPQ at 949. The required reasonable apprehension must be an objective, not purely subjective, apprehension. *Id.; see also Indium Corporation of America v. Semi-Alloys, Inc.*, 781 F.2d 879, 883, 228 USPQ 845, —— (Fed. Cir.1985). If the district court had here found that IMPRA's process was not accused as an infringement of the '566 patent, or that IMPRA had not been threatened, or that IMPRA had no other objective basis for a reasonable apprehension of suit, the present case would have been brought within the ambit of *Jervis B. Webb Co.* Absent such findings, the sole basis for the judgment must be seen as IMPRA's failure to admit infringement.

### (4) The Burden

■ The burden is on IMPRA to establish that jurisdiction over its declaratory judgment action existed at, and has continued since, the time the complaint was filed. To meet that burden, IMPRA must estab-

---

5. The district court may have been misled by oral argument of Gore's counsel, who told the court that this court had in *Jervis B. Webb Co.* required that "there must have been either actual infringement or impending infringement by the declaratory plaintiff." No requirement that there must always *be* "infringement" appears in *Jervis B. Webb Co.* Gore does not argue before us that IMPRA had to admit infringement, or

that there must be infringement, but emphasizes its alternative bases on which the district court did not rule.

IMPRA's statement that "all we were required to do was say we made a product that is accused" is difficult to understand. The statement is true, but IMPRA's complaint contains no such statement.

lish "the existence of facts underlying" an allegation that an "actual controversy" existed.[6] *Jervis B. Webb Co.*, 742 F.2d at 1399, 222 USPQ at 949.

■ Courts do not issue advisory opinions. Absent an actual controversy, a declaratory judgment respecting validity of the '566 patent would be merely advisory. To avoid dismissal, therefore, IMPRA must establish that as of February 1985 it had an objectively reasonable apprehension that it would be sued for infringement of the '566 patent.

■ Similarly, that a patent exists does not alone create a right to challenge its validity in court. Absent an actual controversy, such a challenge is an abuse of the judicial process.[7] In the present instance, IMPRA did not allege in its complaint what it now says are the bases of its apprehension. Nor did it allege in its complaint that it had been accused of infringing the '566 patent. Far from stating it was actually using an "accused" process, IMPRA's complaint stated, in its only reference to its process, that it was employing a specific process (that of an expired Japanese patent to Sumitomo) that could not possibly be found an infringement. The difficulty is that the district court made no finding on whether IMPRA had been threatened with suit on the '566 patent or had had its process accused of infringing the '566 patent.

If the district court should find that IMPRA has never been threatened or accused of infringing the '566 patent, that fact would greatly increase, if it did not overwhelm, IMPRA's burden. Nothing here said however, is intended to foreclose the district court, after it has evaluated all the evidence in this particular and unusual case, from finding facts requiring an ultimate determination that IMPRA had an objectively reasonable apprehension that it would be sued for infringement of the '566 patent.[8] Absent such ultimate determination, the court will presumably grant the motion.

### (5) The Remand

■ As above indicated, the district court did not on this record determine whether Gore had accused IMPRA's activities as an infringement of the '566 patent, or whether IMPRA could in February 1985 have had other valid bases for an objectively reasonable apprehension that it would be sued on the '566 patent. Remand is thus required.

■ Gore submitted affidavits asserting absence of an accusation. IMPRA apparently submitted a 1976 threat against a third party,[9] Gore's refusal to stipulate noninfringement,[10] Dr. Gore's statement in another lawsuit that one cannot produce the product of the '390 patent without use of the process of the '566 patent, and the presence of the process claimed in the '566 patent in certain claims of the '390 patent.[11] Having made no findings on any of those submissions, the district court dismissed the complaint, as it said, solely because of

---

6. The nearest thing in IMPRA's complaint to an allegation that an actual controversy exists is the single sentence, "IMPRA is an interested party within the meaning of 28 U.S.C. § 2201".

7. Gore accused IMPRA of bringing its declaratory judgment action as a means of tactical harassment.

8. IMPRA has not amended its complaint to include allegations it made to the district court and to this court. Gore's complaint on the '390 patent asserts infringement of the patent and three claims "inter alia". Though Gore has answered interrogatories changing the claims asserted "as presently advised", it has never amended its complaint to specify precisely which claims are to be tried. The basis for

jurisdiction, i.e., facts showing a justiciable controversy, and notice of the case to be tried, should be found in the complaint.

9. *See Indium Corporation of America v. Semi-Alloys, Inc.*, 781 F.2d 879, 882–83, 228 USPQ 845, — (Fed.Cir.1985).

10. IMPRA says it offered to withdraw its complaint if Gore so stipulated, and describes Gore's refusal as wasting the resources of the district court.

11. Gore says IMPRA relies here on material not of record. It is for the district court on remand to determine what is properly of record before it.

IMPRA's refusal to admit infringement.[12] Gore cites this court's statement that *judgments* are appealed, not expressions of the district court. *Fromson v. Advance Offset Plate, Inc.*, 755 F.2d 1549, 1556, 225 USPQ 26, 31 (Fed.Cir.1985). Gore disregards, however, this court's correlative statement in the same opinion that a district court's expression of the basis for its ruling *may* reflect such error of fact or law as to require reversal of the judgment when the record reflects no support for such basis. *Id.*, 755 F.2d at 1556, 225 USPQ at 31. Here, so far as the record reveals, the court granted the motion to dismiss for lack of subject matter jurisdiction solely on the basis of IMPRA's failure to admit infringement. The grant of the motion on that basis was, standing alone, a clear error of law.

On the record before us, that erroneous basis must stand alone, for it is not open to us to find *de novo* the facts necessary to support the judgment on other grounds, however clear those facts may appear and however attractive those grounds may be. *Pullman Standard v. Swint*, 456 U.S. 273, 292–93, 102 S.Ct. 1781, 1792, 72 L.Ed.2d 66 (1982); *Kelley v. Southern Pacific Co.*, 419 U.S. 318, 331–

32, 95 S.Ct. 472, 479–80, 42 L.Ed.2d 498 (1974).

We intimate, of course, no view whatever respecting what would be a correct judgment on Gore's motion to dismiss. The district court will on remand determine as it sees fit whether IMPRA has established, under all the circumstances, that an objective basis existed in February 1985 and still exists for a reasonable apprehension that it would be sued for infringement of the '566 patent.

### Conclusion

Gore's motion to dismiss having been granted on a basis incorrect as a matter of law, the case must be remanded with instructions to vacate the judgment appealed from and for such further proceedings not inconsistent with this opinion as the district court may deem necessary.

VACATED and REMANDED.

**12.** It may well have been that, in the context of this case, the district court required an admission of infringement as the only possible basis for determining that an actual controversy existed, because it looked to such an admission to fill a gap it perceived to have been created by the absence of an accusation or other bases for reasonable apprehension. Because there is no finding that such a gap is present, however, we are left with what would be a wholly improper and inadequate basis for appellate review, i.e., conjecture.